LEE, APPELLANT, v. HUNTER AND HALLENBECK, RESPONDENTS.

Where S. being indebted to several persons, was in September, 1817, sued for a default in paying over moneys received as a commissioner of loans, and judgment was recovered against him on the 31st of January, 1818, and on the 1st of January, 1818, S. conveyed to L. his farm and all his personal property for the nominal consideration of $8,501 25, $4,000 of which was paid in Virginia lands which had been purchased by L. 20 years before, but which he had never seen or possessed, and there was no proof of the payment of the residue of the consideration, and S. continued in possession

1829.

Lee
v.
Hunter.

of the property so conveyed to L., it was held that this conveyance was fraudulent and void as against the creditors of S.

*Under the absconding and absent debtor act, an equitable interest of the debtor in real property can be attached by the sheriff, and the same passes to the assignee appointed under the act.

The surplus of the debtor's property, after all his just debts are paid, must be refunded to him.

But before this can be done, the creditors must be notified to exhibit their claims pursuant to the directions of the act, or they must have an opportunity of being heard.

The proper course for the debtor to obtain the surplus would be to file a bill and make the trustees parties; and if they had not given the requisite notices to the creditors, notice might be given under the decree of the court, in the manner adopted of calling in creditors under a decree.

August 4th. THIS was an appeal from the decree of the Equity Court of the third circuit, on a bill filed by Lee against the respondents, and a cross bill filed by them against Lee in that court.

Stoddard Smith, the son in law of the appellant, was formerly the owner of a farm in the town of Greenville in the county of Greene. He, together with the respondent Hallenbeck, were the commissioners of loans for that county under the act of 1808. In 1817, Smith received the interest moneys on the mortgages, but made default in paying the same over to the treasurer. In consequence of this default a suit was commenced in September 1817, against the commissioners and their surety, upon their official bond. A judgment was obtained in that suit, in the Supreme Court, for $750 43, for the damages and costs, on account of the breach of the condition of the bond, which judgment was docketed on the 31st of January, 1818. In May term, 1817, P. Conine commenced a suit against Smith in the Supreme Court, upon a promissory note, which was tried in April, 1818, and a verdict found therein for the plaintiff, upon which a judgment for $667 84 was entered, and docketed on the 14th of May, in the same year. On the 1st of January, 1818, during the pendency of these suits, and a few days before the judgment in behalf of the state was entered, Smith conveyed to Lee all his personal

property, and to him a deed of the farm. The considera-
tion expressed in the deed was $8,000, and in the bill of
sale, $501 25. On the 21st of May, 1818, an execution
was issued by Conine, upon his judgment, to the sheriff of
Greene, who levied the execution upon the real and per-
sonal property sold by Smith to Lee. *The farm was sold
on the execution to Conine on the 15th of September, in
the same year, for the sum of $20. Lee replevied the per-
sonal property, and upon a trial at the circuit before Judge
Van Ness, in December, 1819, a verdict was found therein
in favor of the sheriff, upon a plea of justification under
the execution. After the issuing of this execution, but be-
fore the sale of the farm, Lee made a compromise with
Hallenbeck, by which he conveyed to the latter thirty-two
acres of the farm, for the nominal consideration of $952 64,
the amount of the judgment on the loan office bond, to-
gether with the costs which had accrued in that suit. Hal-
lenbeck at the same time executed a written defeasance,
reciting that the deed had been given by Lee to him only
as security for the amount of such judgment and costs,
which he thereby agreed to pay, and to indemnify Smith
against. Hallenbeck by the defeasance also stipulated that
Lee should enjoy and occupy the land; and if he paid the
interest annually on the above amount, and the principal
at the expiration of two years, he would reconvey to him
the thirty-two acres. The deed was acknowledged on the
day of its date, before Smith, and was recorded on the 10th
of September, 1818, in the book of deeds; but the defeas-
ance was never acknowledged or recorded.

After the sale of the farm on the Conine judgment, and
for the purpose of ·overreaching that sale, Hallenbeck pre-
sented a petition to the legislature, to which Smith an-
nexed a written consent, setting forth the recovery of the
judgment on the loan office bond, and requesting permis-
sion to enforce it against the separate property of Smith,
upon his (Hallenbeck's) paying or securing the payment of
the amount due to the state. On the 13th of April, 1819,

1829.

Lee
v.
Hunter.

[*521]

the legislature passed an act authorizing the comptroller to assign the judgment to Hallenbeck, upon his giving real security for the payment of the debt to the state; and also authorizing Hallenbeck to take out an execution upon the judgment, and to collect the amount out of the separate property of Smith.

Two days after the verdict in the replevin suit, Lee and Smith compromised with Conine and his attorneys, and gave their joint and several sealed note to Conine for $790, payable *in one year with interest. They also gave to the attorneys, for the costs and counsel fees in the several suits which had grown out of the controversy, another joint and several sealed note for $410, payable in six months with interest. Conine at the same time gave to Lee an agreement, reciting the giving of these notes, and also reciting that Smith was indebted to Hallenbeck in the sum of $858, or thereabouts, being the amount for which Hallenbeck was responsible to the state, and which was the proper debt of Smith; by which agreement Conine covenanted that if Lee and Smith paid the notes when they became due, and secured Hallenbeck against the demand in favor of the state, then, and not until then, he (Conine) would quit claim to Lee, with covenants against his own acts, the farm which he purchased at the sheriff's sale, and on which Smith resided. Before either of the notes fell due, Lee left this state and went to Vermont, where he has ever since resided. On the 8th of June, 1820, Hallenbeck applied to the comptroller and obtained an assignment of the judgment, in pursuance of the act. On the 10th of August an execution was issued thereon by the written consent of Smith, upon which the farm was sold on the 7th of October, 1820, and bid in by Brigham, the son in law of the latter, for $1,000. On the 14th of October, Brigham assigned his bid to Hallenbeck, in consideration of which the latter gave a receipt in full to the sheriff on the execution, and Smith gave a release to the sheriff for the surplus raised on the sale. A certificate of the sale was given and

filed according to law; and at the expiration of the fifteen months, the sheriff gave a deed of the farm to Hallenbeck, under the sale and assignment of Brigham's bid. Soon after the sale proceedings were instituted against Lee by Conine and his attorneys, before Chief Justice Spencer, under the act for relief against absconding and absent debtors; and upon his warrant the sheriff of Greene attached the farm and certain personal property as the propty of Lee. The personal property was claimed by the son of Lee, and by Smith and another son in law; and upon a sheriff's inquest, the jury decided in favor of their claims. The usual notices were published; and on the 25th of July, 1821, the chief justice *made an order appointing A. Van Bergen, William Gay and William Chancey, trustees for all the creditors of Lee, in pursuance of the directions of the statute. The trustees a few days thereafter assumed the execution of the trust and took the oath required by law. In March, 1822, Hallenbeck and wife conveyed the farm to the defendant, Hunter, for the sum of $4,100, out of which he received the amount due from Smith, and the costs and expenses which he had incurred. The two mortgages to the state and to Clowes also constituted a part of the $4,100; and the balance was given to the agent who effected the sale to Hunter for Hallenbeck.

[*523]

In 1824, one of the attorneys of Conine followed Lee to Vermont, but finding that he had no property there out of which their debts could be collected, a compromise with him was effected, by which he was discharged from personal liability on the notes, on his paying them $250. A release was thereupon executed by Conine and his attorneys, on the 24th of May, 1824, by which they released and discharged Lee from the payment of the notes; but with an express provision that it should not operate to discharge Smith from the payment of the notes, except as to the $250, which was to be credited on the note of Conine. In 1825, Lee brought an ejectment suit against Hunter, for the recovery of the farm, which was tried at the April cir-

cuit in 1826. The proceeding under the act against Lee were produced in evidence, and the judge decided that by the appointment of trustees the interest of Lee, if he had any of the premises, became vested in them. The plaintiff thereupon submitted to a non-suit.

Shortly afterwards the appellant filed the bill in this cause in the equity court of the third circuit, alleging that his purchase of the farm from Smith was honest and *bona fide*, and praying that the appointment of trustees might be vacated; that the sale and conveyance under the judgment assigned to Hallenbeck might be set aside and the judgment be declared satisfied; that he might be restored to the possession of the farm, and that the defendants might be compelled to account for the rents and profits thereof; and for general relief.

*The respondents put in their answer, setting up the fraud in the conveyance from Smith to Lee, and alleging that the conveyance from Lee to Hallenbeck was not given in satisfaction of the debt due to the estate, but only as a security by way of mortgage; and that after the trial of the replevin suit that security was abandoned by the consent and understanding of the parties, on the ground that it had been defeated by the sale under the Conine judgment. By their cross bill they prayed that the deed from Smith to Lee might be declared fraudulent and void, and that the same might be decreed to be delivered up and cancelled, and for further relief against the appellant.

The cause was brought to a hearing before Judge DUER, in his equity court, and in November, 1827, a decree was made therein, dismissing the appellant's bill, with costs in the original suit and upon the cross bill, and setting aside the conveyance of January, 1818, as fraudulent and void.

OPINION OF JUDGE DUER:—From a full and deliberate consideration of the testimony in these causes, I am satisfied that the conveyance of the 1st of January, 1818, from Stoddard Smith to Noah Lee was not only a contrivance for de-

frauding certain creditors of Smith, but that its invalidity has been virtually admitted by both grantor and grantee. If I am right in this conclusion, upon the facts, it follows as a necessary legal consequence that nothing passed by that deed, inasmuch as it is void both at common law and by the statute of frauds, unless first, Lee acted in good faith, without any knowledge or co-operation in regard to the fradulent purposes of Smith; or secondly, Hallenbeck has subsequently affirmed the conveyance, or ceased to be a creditor of Smith, and is thereby precluded from impeaching the deed on the ground of fraud.

I. In the case of *Anderson* v. *Roberts*, in Error, (18 John. R. 515,) it was held that a *bona fide* purchaser for a valuable consideration without notice of the fraud, whether the purchase be made from a fraudulent grantor or a fraudulent grantee, is equally protected by the proviso contained in the 6th section of our statute, as that proviso applies to the second *as well as to the third section of the act. To bring the present case within that authority and within the terms of the proviso, it must, however, appear that the deed of the first of January, 1818, from Smith to Lee, was made upon good consideration, as well as without notice on the part of the grantee of the fraudulent intent of the grantor.

Now, without entering into a minute examination of the various particulars set forth by Lee in his answer to the cross bill, as forming the consideration of the deed from Smith, I shall advert principally to the item of the Virginia land, conveyed in part payment by Lee to Smith, at the estimated value of $4,000, and shall barely enumerate the rest. The whole consideration of the conveyance from Smith is stated at $8,000, including two mortgages, by which the farm was incumbered to the amount of $1,850. Nearly two-thirds therefore of the balance of the consideration, deducting these mortgages, consisted of this land in Virginia, which, however regular the paper title, is described with no greater certainty than as one thousand acres lying

1829.

Lee
v.
Hunter.

[*525]

1829.

Lee
v.
Hunter.

upon a branch of James river, in the county of Botetourt, of which Lee was never in possession, and seems literally to know nothing beyond what his title deeds have revealed to him, and of which Smith knows no more, does not pretend to have obtained possession, or to have attempted even the location. The nominal amount indeed of the consideration greatly exceeds the average valuation affixed to the farm by the witnesses, and hence it is contended on the part of Lee, that if the estimated value of the Virginia land was deducted, there would still remain a sufficient consideration for his purchase. But Lee, in his answer, expressly swears, that though he does not believe that at the time the deed was executed the farm could have been sold for cash for $8,000, yet that he considered it worth that sum to him. If the estimated value of the Virginia lands be deducted from the consideration, there will remain a balance of $2,150, exclusive of the mortgages, composed of the following items, viz: 1st. A promissory note of one Abraham Acorn, for about $600, which was subsequently returned by Smith to Lee, and collected by him; 2d. A sum of $750

[*526]

*for money from time to time advanced by Lee to Smith; and 3d. Of Lee's bond or covenant to Smith for the balance of $850, payable by instalments. Now, although the farm was eventually sold under Hallenbeck's execution for less than the aggregate amount of these last two items, yet Lee can derive no benefit from that circumstance, as he could not possibly have supposed that sum a sufficient consideration when he agreed to give so much more for it in his bargain with Smith, believing it, as he states, to be worth to him the full amount of $6,150, exclusive of the incumbrances. For $4,000 of this amount there has been, as I conceive, a failure of consideration, so that in reference to the alleged agreement between the parties, the remaining $2,150, reduced further by the amount of the Acorn note to $1,550, cannot certainly be deemed as sufficient consideration, and consequently cannot be regarded as a good one

according to the spirit or the letter of the statute, as it was evidently not the consideration intended by the parties.

In case, however, I should have mistaken the law on this point, I proceed to inquire whether in point of fact Lee had notice of the fraudulent designs of Smith in executing the conveyance in question?

Previous to and at the time of executing the conveyance, Smith declared to Lee his intention to provide for all his honest debts, referring particularly to Hallenbeck's liability for him to the state, and Lee agreed to pay Hallenbeck whatever Smith should owe on that account. No specific provision was made for the purpose, nor was there any fund applicable to it, except the bond of $850, which was insufficient to have discharged the debt to the state together with the other demand against Smith, including Conine's, of which last Lee swears that he knew nothing. Admit this to be true, and Lee not to be chargeable with notice in respect to that demand, he was nevertheless apprised of Smith's defalcation as a commissioner of loans and of Hallenbeck's liability on that account; and although he assented verbally to the justice of making provision to meet it, yet he neglected to do so at the time of the conveyance, but took from Smith, his son in *law, such a transfer of his whole estate, real as well as personal, as left Hallenbeck (until upon pressing for security he afterwards obtained the conveyance from Lee) in no better situation than Conine or any other creditor of whose claim Lee might have been ignorant, and whom Smith may have intended to defraud. It is impossible, therefore, in the face of these facts to maintain that Lee had no notice of this effect of the conveyance, which affords the best evidence of the intent of the parties to hinder and delay, if not actually to defraud the state in recovering its demand from Smith, whilst it deprived Hallenbeck of the means of his indemnity. Nor from succeeding and progressive steps in the transaction, the dubious character of Lee's possession, the return of Smith to the premises, his disposition and removal of the personal prop-

[*527]

erty, his receipts of the rents and profits of the farm and the virtual abandonment of the conveyance upon the compromise with Conine, does it seem to me reasonable to believe that Lee could have entered into the arrangements with Smith in perfect good faith, notwithstanding the provision afterwards made for Hallenbeck's security out of the farm itself, when he appears thus to have co-operated and acquiesced in all those subsequent measures so strongly indicative of fraud.

If then the facts and circumstances of the case do not bring Lee within the protection afforded by the statute to a *bona fide* purchaser, it remains to consider:

II. Whether Hallenbeck has, by any act or assent of his precluded himself from impeaching the deed in question on the ground of fraud?

It is contended that he is estopped from controverting its validity, first, because he has affirmed it by taking a conveyance from Lee of thirty-two acres of the land in satisfaction of his claim against Smith; and secondly, from having in consideration of that conveyance assumed to discharge the debt due to the state, and thus divested himself of his character and rights as a creditor of Smith.

1st. The conveyance of the thirty-two acres, if not made upon the suggestion of Lee or Smith, seems to have been accepted by Hallenbeck in despair of obtaining any other [*528] *security; and he appears to have relied more on the covenants it contained than on the title it transferred to him. It was in fact a mortgage. No possession appears to have been taken under it. It was accompanied by an agreement in the nature of a defeasance, which expressly declares that the deed was given to secure Hallenbeck against the demand of the state, and some other advances he undertook to make for the benefit or account of Smith; and it became inoperative even as a security, in consequence of the invalidity of the deed from Smith to Lee, and the sale of the premises under the Conine judgment; on which ground it

seems to have been ultimately abandoned by the consent of all parties. But

2dly. It is alleged that Hallenbeck in consideration of this conveyance assumed to discharge the debt to the state, and thereby divested himself of his right as a creditor, to impeach the deed from Smith to Lee. It is true that Hallenbeck, by the instrument accompanying the conveyance from Lee, agreed to discharge the debt to the state, and this formed the greater part of the consideration of the deed. But Hallenbeck was jointly bound with Smith to the state : until therefore he had paid the debt, he could have maintained no action against his co-obligor, and consequently so far from divesting himself by accepting the deed from Lee of his right as a creditor of Smith to impeach the conveyance to Lee, he could not before the actual payment of the money to the state, have impeached it in that character, but only in virtue of the general terms of the statute which extends relief to " creditors and others." Besides, the agreement in question fell with the deed which it accompanied, upon the result of the trial with Conine and the compromise which ensued; and another provision was made for the indemnity of Hallenbeck by an assignment of the title acquired to Smith's farm by Conine under his judgment, but this also fell through in consequence of the failure of Lee to perform his part of the agreement; and thus was Hallenbeck compelled to avail himself of the act passed with the consent of Smith in his favor, by satisfying in the manner permitted under its provisions the joint debt of Smith and himself, and thereupon *procuring the assignment of the judgment recovered by the state, and proceeding to the sale of Smith's farm under it.

From the view I have taken of this case, it is unnecessary to pursue the subject further, or to enter into a discussion of the points raised at the hearing in regard either to Lee's ignorance of the act passed for the relief of Hallenbeck on the one side, or to the effect of the proceedings against Lee as an absent or absconding debtor on the other.

1829.

Lee
v.
Hunter.

[*529]

My opinion on the question already considered leads me at once to conclude that Lee's bill must be dismissed with costs, and the relief prayed for by Hallenbeck and Hunter in their cross bill granted, by directing the deed from Smith and wife to Lee, of the first of January, 1818, to be delivered to the clerk to be cancelled, and that the costs of the cross bill be also paid by Lee.

*P. S. Parker* and *A. Van Vechten,* for the appellant:—The original bill was filed by the appellant for relief against the sale under the judgment in favor of the people. The act of the legislature passed upon the application of Hallenbeck was, on his part, a violation of the defeasence executed by him to Lee, the appellant. Hallenbeck was satisfied with the security given him by Lee, and Lee was fairly exonerated from the judgment in favor of the state. Hallenbeck made an improper use of this judgment. He should have paid it off according to his agreement, and not have enforced it against the lands upon which it was a lien. He accepted Lee's conveyance of the 32 acres as his indemnity, and he has not shown that this indemnity failed. Conine's judgment was never considered of any avail. If Hallenbeck had any right to sell under the judgment in favor of the state, it must either have been because the conveyance from Smith to Lee was fraudulent, or that the deed to him of the 32 acres was not effectual. The deed from Smith to Lee was given for an adequate consideration. The Virginia lands, a part of the consideration, can be located, as a survey has been made of them, which was recognized in Virginia. If the residue of the consideration was not paid it was satisfactorily secured. *No fraud was intended by Smith and Lee. All the debts of Smith were secured as far as was practicable. The decision of the replevin suit cannot affect the real property. The basis of the compromise of that suit was the stipulation of Hallenbeck.

If, however, Smith did convey with intent to defraud his

[*530]

creditors, such intent will not avoid the conveyance, if Lee was ignorant of the fraud. (*Jackson* v. *Terry*, 13 John. R. 473; *Sands* v. *Hildreth*, 14 John. R. 498.) And if both Smith and Lee combined in an attempt to defraud creditors, none but creditors can take advantage of the fraud. (*Anderson* v. *Roberts*, 18 Johns. R. 515. Hallenbeck is estopped from availing himself of the statute of frauds, in consequence of his having affirmed the conveyance by his acts. (*White* v. *Stringer*, 2 Levinz, 105; Rob. on Frau. Con. 162, 167.) The proceedings under the absconding debtor act against Lee were never effectual. No entry was ever made on the real property by the trustees, nor any possession taken by them. The attaching creditors subsequently released Lee from the debts, for which the attachment issued. The trustees having neglected during eight years to act are not now entitled to be made parties. If this ought to have been done, the respondents should have made them parties in their cross bill.

*J. L. Bronk*, for the respondents:—The deed from Smith and wife to Lee, the appellant, was fraudulent and void, having been given with intent to defraud Smith's creditors. A relationship existed between the parties; suits were pending against Smith at the time of the conveyance, (*Deming* v. *Smith & Judson*, 3 John. Ch. R. 332,) and no consideration was paid by Lee for the same. The Virginia lands furnished no good consideration, as they cannot be located; and there is no proof of any real payments having been made by Lee to Smith. No change of possession accompanied the execution of the deed and bill of sale to Lee. This is a strong badge of fraud. If Smith attempted to defraud one creditor, any other creditor may take advantage of it and avoid the conveyance. (*Read* v. *Livingston*, 3 John. Ch. R. 501; *Jackson* v. *Seward*, 5 Cowen, 67 to 73.

*The title of Lee (if any) is in the trustees appointed under the absconding debtor act, (1 R. L. 157, 159.) The     [*531]

1829

Lee
v.
Hunter.

1829.

Lee
v.
Hunter.

appointment of the trustees cannot be vacated, as the appellant has not made them parties. Trustees should always be made parties. (Cooper's Eq. Pl. 34; *Movan* v. *Hays*, 1 John. Ch. R. 339; *Osgood* v. *Franklin*, 2 id. 19; *Sells* v. *Hubbell*, 2 id. 394.)

Lee admitted Conine's title, by agreeing to take one under him. And Hallenbeck not being charged as trustee, no remedy can, in any way, be had against him. The act of the legislature was not only binding and valid, but equitable.

THE CHANCELLOR :—The first question presented in this case is whether the conveyance from Smith and wife to the appellant, in January, 1818, was a fair and *bona fide* conveyance, or was intended to defraud creditors, or hinder or delay the collection of their debts.

The suit of Conine was then pending, but could not be tried so as to have a judgment rendered therein previous to the May term. But the suit in behalf of the state, on the loan office bond, was in a situation that a judgment might be entered therein in a few days. Smith was also indebted to Losee and others. Under such circumstances he made a conveyance of all his property, both real and personal, to his father in law. And what did he get in exchange to pay his creditors, who were about to obtain judgments against him? He got $4,000 in Virginia lands, which had been conveyed to Lee, twenty years before, but which he had never seen. It is true a regular paper title to this land is produced, under a location made in 1786. But every person at all acquainted with the location of Virginia and Kentucky land warrants is aware that it frequently happened that several holders of these warrants, located upon and obtained patents for the same tract, without knowing it had before been granted to others. A patent, under such circumstances, is scarcely *prima facie* evidence of title. And when we take into consideration the fact that no attempt has been made to take possession of the land under this

title for more than forty years, it is hardly credible that the appellant still believes it to be a valid and *subsisting title, and that the lands are worth the price mentioned in the deed. But if the title had been known to the parties to be good, it is that kind of property which would be the least likely to enable a debtor in failing circumstances to raise money to pay his honest creditors. The Acorn note, for about $600, which also formed a part of the alleged consideration of the deed, was afterwards collected by Lee; and the bond, which is said to have been given for the balance, is not recollected by the subscribing witness to the deed, and no body has ever seen it. In addition to this, the possession of the property was not actually changed, although it might have been nominally. On the whole I am perfectly satisfied, from the evidence, that the conveyance was fraudulent; and was intended not only to defeat the recovery of Conine's debt, but also to protect the property of Smith from the operation of the judgment which was then about to be obtained on the loan office bond. Although the state could not probably be defrauded, as Hallenbeck and the surety had sufficient property to pay the debt, yet as they both stood in the relation of sureties to Smith, in respect to that debt, the effect of the conveyance was to defraud them, by removing the property of the real debtor beyond the reach of the execution, and leaving it to be satisfied out of the property of his sureties.

That a fraudulent use was made of this conveyance as regards Hallenbeck, is also evident from the pleadings and proofs in this case. The whole amount due to this state was received and misapplied by Smith; and Hallenbeck and his surety were entitled to full indemnity from him. In the appellant's bill in this cause, he says that he agreed with Smith, as a part of the consideration of the conveyance of the farm, to pay and discharge the amount due to the state for which the suit was brought on the bond. If such an agreement was made, it was carefully concealed from the knowledge of Hallenbeck; and it appears from

the testimony that Lee absolutely refused to become per-
sonally responsible therefor, and Hallenbeck was compelled
to assume the payment of the whole amount himself, in
order to obtain a mortgage upon a very small part of the
farm for his indemnity. Even *that was no valid security,
as the written defeasance was not acknowledged or re-
corded, and was left in the hands of Smith or Lee, so that
Hallenbeck had no protection whatever against subsequent
purchasers or incumbrancers.

Although the finding of the jury upon the sheriff's
inquest in August, 1818, as to the personal property which
was conveyed simultaneously with the deed, and the more
formal trial and verdict, which was given at the circuit in
December, 1819, in the replevin suit for the same property,
are not conclusive evidence of the fraudulent nature of this
transaction; yet they are calculated to give me additional
confidence as to the correctness of the conclusion at which
I have arrived on this question from the pleadings and
proofs before me in this cause. But the result of the
replevin suit has an important bearing upon another point
in this case.

It is insisted on the part of the appellant that as Hallen-
beck took a deed from him for the thirty-two acres, he is
estopped from setting up the fraud in the original convey-
ance. On the part of the defendants it is alleged that by
the finding of the jury in the replevin suit, all parties be-
came satisfied the conveyance of the first of January, 1818,
could not be sustained; and that the legal title to the whole
farm was vested in Conine, under the sale upon his execu-
tion; that in consequence thereof, the mortgage to Hallen-
beck, and the agreement therein contained on his part,
which had been made before the fraudulent nature of the
original deed to Lee was known to him, were abandoned;
and a new agreement was made for his indemnity. I think
this allegation in the answer is abundantly established by
the evidence in the case. There was no formal surrender
of the deed and defeasance, but the recitals and stipulations

contained in the written agreement made between Lee and Conine, in December, 1819, are wholly inconsistent with the idea that the agreement between Lee and Hallenbeck, in May, 1818, was to remain in force. Lee treated with Conine upon the basis of the verdict which had been rendered two or three days before that time, by which the transactions of the first of January, 1818, were found to be fraudulent and void. He agreed *to become responsible to Conine for the whole amount of his debt and expenses, and to the attorneys for their costs and counsel fees. Conine on his part agreed that if the notes which were then given should be paid by Smith and Lee when the same fell due, and they should also secure Hallenbeck against the demand in favor of the state, he would convey the farm to Lee. This condition has never been complied with ; and if the legal title to the farm is not in Hunter, under the sale upon the loan office execution, it is still in Conine. The release of all personal liability against Lee on the notes is not sufficient to authorize him to claim a conveyance under the agreement of December, 1819. That conveyance did not depend upon the personal responsibility of Lee. It was only to be made upon the payment of the whole amount of the notes by Smith and Lee. The principal part of these notes is still due from Smith, and Lee has no equitable claim to the land until the whole amount is paid. Conine is not a party to the suit, and no decree can be made affecting his rights. Hunter is not estopped from setting up an outstanding title in Conine. He did not go into possession under title derived from Lee, but in hostility to his claim. If he was in under the mortgage to Hallenbeck, it could not affect his right to set up an outstanding title in the residue of the farm beyond the thirty-two acres. And even if he was in possession of the thirty-two acres under the mortgage, the only right of Lee would be to redeem that part of the farm on payment of the amount secured by that mortgage and interest. But I have already showed that the mortgage security was considered as abandoned from

1829.

Lee
v.
Hunter.

[*534]

the time of the compromise with Conine, and no person was ever in possession under the mortgage. The agreement of Conine recites that Smith was then residing on the farm.

If the original deed to Lee was fraudulent, and the mortgage security to Hallenbeck was abandoned by the agreement of December, 1819, the appellant has no right to complain of the proceedings under the act for the relief of Hallenbeck, passed in April, 1819, unless he thinks proper to comply with the conditions of the contract with Conine, and to make his claim under the equity of that agreement. But *if he had all the proper parties before the court, and was willing to comply with those conditions, his right to the farm in the hands of Hunter would be extremely doubtful, especially after such a lapse of time.

At the time of the compromise, in December, 1819, the people had a judgment which was a lien on the farm, and was prior in point of time to that under which Conine had purchased. The only question which can possibly arise in this case, is whether Hallenbeck was so far bound by that agreement as to preclude him from taking advantage of the law which had been passed for his relief. Although a condition was inserted in that agreement for the benefit of Hallenbeck, he was not technically a party thereto, and had no personal claim against any one except Smith, who was insolvent, for the payment of the debt for which he was responsible. He had an equitable claim to have the judgment of the state satisfied out of the property of Smith, on which it was a prior lien, instead of its being satisfied out of his own property. The legislature, in passing the act, divested no legal or equitable rights, and did nothing more than a court of equity might have done under like circumstances. At the time Hallenbeck took the assignment under that act, Lee had left the state, and probably without ever intending to comply with the conditions of the contract with Conine. It therefore became a struggle between two *bona fide* creditors of Smith for a preference against the estate which had been fraudulently conveyed to Lee. In

this contest Smith took the side against Conine, and gave his assent to the issuing the execution, and released his claim to the surplus. At the sale under that execution the property was sold for much less than its real value; and Conine, in whom the legal title was then vested, had a right to redeem the property from this sale during the period of twelve months, and was also entitled to the surplus moneys which Smith released. Lee, who had contracted with Conine for the purchase of his right, might also, under the equity of the statute, have redeemed it from that sale. The property was in this situation when the proceedings were instituted against Lee as an absconding debtor. He had at that time an equitable interest *in the farm, subject to the payment of the notes to Conine and his attorneys, and the amount due on the bid. This right was attached by the sheriff, and passed to assignees, who were appointed in July, 1821. But as neither Conine or the trustees redeemed the premises from the sale, the whole title passed to Hallenbeck by the assignment of Brigham's bid, and the sheriff's deed in January, 1822. If this was a valid sale as against Conine and Lee, which I am inclined to think it was, the whole legal and equitable title to the farm is in Hunter, under this deed from Hallenbeck. If this sale should be set aside as inequitable, then the legal title is in Conine; and the trustees of Lee, if they have any right to the property, can only avail themselves of it by paying the full amount of the notes to Conine and his attorneys, together with the amount which Hallenbeck has been obliged to pay on account of Smith. But those claims against the property, if any such exist, cannot be settled in this suit, as neither the trustees or Conine are parties. By the 10th section of the act, (1 Rev. Laws, 159,) the trustees from the time of their appointment, became vested with all the estate of the absent debtor; and by the 26th section (1 Rev. Laws, 163) the appointment is made conclusive proof in all courts that the debtor therein named was at the time absent, absconding or concealed, within the meaning of the

[*536]

act; and that the appointment and proceedings previous thereto were regular. The surplus of the debtor's property, after payment of all his just debts, is to be refunded to him. The statute has prescribed the mode of notifying the creditors to exhibit their claims; and the debtor is not entitled to a restoration of the surplus of his estate until those directions have been complied with, or the creditors have had a chance to be heard by their trustees, and by a public notice under a decree of this court. A decree that the defendants in this cause account to Lee, would not protect them from similar proceedings at the suit of the trustees. He alleges in his bill that there are no other creditors; but the trustees have taken no steps to ascertain that fact, and it is impossible for the defendants to know whether that allegation is true or not. The proper course

[*537] for the debtor to obtain a surplus *to which he might be entitled in such a case, would be to make the trustees parties; and if they had not already given the requisite notices to the creditors to exhibit their claims, notice might be given, under the decree of the court, in the usual manner of calling in creditors under a decree.

I am perfectly satisfied that this suit was improperly brought by the appellant; that no decree could be made in his favor against the defendants, and that the conveyance of the 1st of January, 1818, was fraudulent and void, not only as against Conine, but as against Hallenbeck, and the same ought to be set aside. The decree of the equity court is therefore affirmed, with costs; and the further proceedings to carry the same into effect may be had in this court.