# Noble & Brother *et al.* *v.* Hallonquist *et al.*

### Bill of Review.

1. *Bill of Review; when cannot be maintained.*—Where the complainant sought to have a resulting trust declared in lands, to the extent of her moneys used by the husband in taking up his purchase money notes, and to be subrogated to rights under the mortgage given to secure the notes, and prayed also for general relief, and the chancellor decreed that she was entitled either to a personal decree against the respondents, for her money thus used, or to regard the payment as an equitable transfer of the notes in trust for her, and "she having elected to take the latter," the decree grants her appropriate relief accordingly, and she does not appeal—she cannot afterwards maintain a bill of review for error apparent on the face of the decree, on the ground that the chancellor should have offered an election either to take a personal decree against the respondents, or to have the land sold and a decree against the respondents for the deficit, if the land did not yield enough to pay her claim.

APPEAL from Chancery Court of Montgomery.

Heard before Hon. ADAM C. FELDER.

The appellee, by next friend, on the 28th of September, 1872, filed her bill of review to correct an error apparent in

[Noble v. Hallonquist.]

the original suit, hereinafter referred to, between herself and the appellants, Noble & Brother, and others.

The case made by the original bill was as follows: Complainant, at and prior to the 9th day of October, 1865, was a married woman, having a statutory separate estate, consisting of a legacy given her by the will of Henry Lucas, deceased. Her husband afterwards bought a plantation on a credit, in her name, from one Gunter, and complainant and her husband mortgaged the lands, and assigned her legacy in the hands of the executor, Freeny, to secure the notes. Gunter transferred all of the notes, except one, to the appellants, Noble & Brother, who collected the legacy from the executor, and with the money thus obtained paid two of the purchase money notes, and turned them over to complainant's husband. A third note for $5,508.65, held by Noble & Brother, not having been paid, they were about to sell, under the power given in the mortgage, when complainant filed her original bill to enjoin the sale, &c. The material portions of the original bill and decree, as shown by the bill of review were as follows: It is alleged, "That by virtue of the payment of complainant's said legacy to said Noble & Brother, and the delivery by said Noble & Brother to her said husband of said promissory notes, a trust resulted in favor of oratrix to the extent of said promissory notes so delivered, or the amount of the legacy so paid, and that the same was a charge upon the lands so bought, and that the equity of oratrix is superior to that of said Noble & Brother to have the lands subjected to the payment of said note for $5,508.65 retained by them as aforementioned ; that said husband had never accounted to oratrix for said legacy, nor paid to her, nor for her use, in any way, said promissory notes, delivered to him by said Noble & Brother, and that said notes so delivered to him were still due. * * * * That said husband of oratrix was insolvent, and the only security oratrix had for the payment of the amount due her by virtue of said resulting trust, was the security afforded by the mortgage aforementioned, and said lands were not of sufficient value to satisfy the note held by Noble & Brother, and the said two notes belonging to oratrix by virtue of said trust."

The prayer for relief in the original bill was a follows : "That your Honor would on final hearing, decree that there was a resulting trust in favor of oratrix to the amount of said notes delivered as aforesaid to oratrix's husband, on account of the payment of her said legacy to said Noble & Brother, and that said trust was a charge upon said lands,

and that your Honor would cause an account to be taken before the register, ascertaining the amount due oratrix, and other persons holding the outstanding promissory notes, and that your Honor would settle the equities of the several holders of said notes, which are a charge on said lands, and order a foreclosure of said mortgage and sale of said lands for the payment of oratrix, and other holders of said notes, in the order and amount determined by your Honor, and that your Honor grant her such other or further relief in the premises as should seem meet and proper."

On the 24th day of May, 1870, the chancellor rendered a decree in the original cause, wherein he held, that the mortgage and promissory notes did not bind the separate estate of complainant, although valid as to her husband; that the complainant was entitled to the sum of $10,500, the amount of the legacy, as her statutory separate estate, that the payment of this sum in discharge of the notes of her husband, given for said plantation and secured by said mortgage, either entitles her to look to said Noble & Brother, for said sum and interest thereon, and to have a personal decree against them for payment of the same, or to regard said payment as an equitable transfer, by said Noble & Brother of so much of said notes given for said plantation to her husband, in trust for her, and she having elected to take the latter, it is deemed that Caroliza C. Hallonquist is the equitable owner of so much of said notes as was paid by said Freeny to said Noble & Brother, and that she has a priority over Noble & Brother as to any unpaid balance due to them upon the note still held by them."

The bill of review insists that this decree is erroneous; that there is nothing in the record showing that complainant made the election referred to; that she was entitled to take a personal decree against Noble & Brother for the amount of her claim, or to have the land sold in payment of the claim and to have a personal decree against Noble & Brother for the balance; that these errors and imperfections appear in the body of the decree, wherefore she prays "that said decree be reviewed, reversed, and set aside, as to the matters aforesaid, and that your Honor would order and, decree, that if the proceeds of the sale of said lands should be insufficient to pay the demand of your oratrix, principal and interest, after the application of the same as directed in said decree, then the said Noble & Brother shall pay to your oratrix such balance due her as aforesaid," &c.

The respondents, Noble & Brother, demurred to the bill on the following, among other grounds:

[Noble *v.* Hallonquist.]

1st. That the bill of review filed for error apparent, shows that more than two years had elapsed since the rendition of the decree sought to be reviewed.

2d. That the error complained of can be corrected only on appeal; the complaint being not that the decree is erroneous as far as it goes, but that it is defective in not going far enough.

3d. That the election by the complainant is a fact ascertained by the chancellor and recited on the record, and that complainant on a bill of review, cannot controvert this fact, and the chancellor cannot look beyond the decree, in which it is recited as an ascertained fact.

4th. That the errors on which the bill of review is founded consists in the fact that complainant was not granted relief in the original decree, which, if granted, would have been inconsistent with the case made by the original bill, and the relief therein prayed.

5th. That the "error apparent" is a mere alleged defect in the decree, that further relief could or might have been granted, but which the chancellor did not deem proper to grant.

The demurrer was overruled, whereupon the respondents asked leave to file an answer, which the court refused, because it did not allege that the matters stated in the bill of review, in relation to the proceedings and decree in the original suit, "were incorrect, or made omissions of some material thing therein, and did not impeach the same for fraud."

Duncan, holder of a note, which was established by the original decree, and which is not assailed by the bill of review, answered admitting the statement of facts contained in the bill of review, submitting to the judgment of the court as to the law arising thereon, and a decree *pro confesso* was taken against complainant's husband.

The chancellor being of opinion that there was an error of law apparent on the face of the decree rendered, in the particulars sought to be corrected by the bill of review, rendered a decree granting relief accordingly, and hence this appeal.

STONE & CLOPTON, for appellants.

ELMORE & GUNTER, *contra.*

BRICKELL, C. J.—In *McDougald* v. *Dougherty,* 39 Ala. 409, the doctrine in reference to bills of review was carefully and thoroughly considered, and we are disinclined

to unsettle any principle therein declared. The present record presents the inquiry, what constitutes an error in a decree enrolled, which will justify and uphold a bill of reviewed?

In the case of *Perry* v. *Philips*, Lord Eldon said: "The cases of error apparent found in the books, are of this sort; an infant not having a day to show cause, &c.; not merely an erroneous judgment."

In *O'Brien* v. *Connor*, 2 Ball & Beatty, 154, the original bill had been filed to foreclose a mortgage. The final decree had been enrolled. The mortgagor having died his devisees were not made parties. It was contended on bill of review that this was error apparent; that the devisees ought to have been brought into court, that they might be decreed to make contribution towards the extinguishment of the mortgage. The bill of review was filed by the defendant in the original suit. Lord Chancellor Manners said: "When it is considered how many opportunities the defendant had of making this objection, and of drawing the attention of the court to it, this present bill appears to be a most extraordinary one. I do not think that the grounds he states can be the proper subject of a bill of review."

In *Haig* v. *Homan*, 8 Clark & Fin. 320, it was sought by bill of review to obtain relief which had not been specially claimed in the pleadings in the original cause. The opinion in the House of Lords was pronounced by Lord Chancellor Cottenham. He said: "If it be intended to allege that the decree ought to have contained a direction in that event for the repayment of the rents received, I think it clear there was no case upon the pleadings for any such direction, and, therefore, there was no such error apparent."

In the case of *Trulock* v. *Robey*, 15, Sim. 265, a mortgage interest had been assigned by the mortgagee to Robey, senior, who entered into possession, received the rents and profits for several years, and then died. Robey, the younger, then took possession as devisee, and enjoyed the rents and profits for many years. See report of same case, 12 Sim. 402.

The original bill was filed by the heirs of the mortgagor against Robey, the younger, to have an account of the rents, and to redeem the mortgaged premises. The personal representative of Robey, senior, was not made a party to the suit to redeem.

The bill charged that Robey, the elder, "entered into possession thereof and into the possession of the rents and profits thereof; and that he continued in such possession un-

[Noble v. Hallonquist.]

til his death; that he made his will,  *  *  and thereby devised, &c., to the defendant,  *  *  *  and on his death the defendant entered into possession of the mortgaged tenements, and had ever since been in possesssion thereof, and in receipt of the rents and profits thereof;  *  *  and by means thereof, the whole or almost the whole of what was due on the mortgage, had been satisfied and discharged, and that the plaintiff was entitled to have an account taken of the rents and profits received *by the defendant*," &c.

The bill prayed specially "for an account of the rents and profits of the mortgaged tenements, which had been received by the defendant, or by any other person by his order or for his use, or which, without his wilful neglect or default, might have been received."

It is also stated by the vice-chancellor in his decree that the bill contained a prayer for general relief.

In the decree, the vice-chancellor directed the master to take an account of the rents and profits of the mortgage tenements received by the defendant, or by any other person or persons by his order, or for his use, or which, without his wilful fault or neglect, might have been received."

In taking the account, the master declined to inquire of, or report on the matter of rents and profits received by Robey, the elder, on the ground that he had not been directed in the decree to do so. There was an exception to the report of the master on this account; the exception was overruled by the vice-chancellor, and on appeal to the Lord Chancellor, the ruling of the vice-chancellor was affirmed.

It may not be out of place to remark that inasmuch as Robey, the younger, was in possession only as devisee of Robey, the elder, any payment made to the elder Robey, or rents received by him in his life time, were proper credits in taking account of the amount due on the mortgage; and this without making his personal representative a party.

Robey, the younger, stood in privity of estate with Robey, the elder; and succeeded to such interest only as the elder Robey enjoyed at the time of his death.

A bill of review was then filed for error apparent. The error complained of was the omission of the master to report the rents and income received by Robey, the elder. The vice-chancellor said: "No one can dispute that the plaintiff was entitled to an account of the rents received by Robey, the father, under whom the defendant claims. But the plaintiff stated in her bill that Robey, the father, had been in possession, and in receipt of the rents of the mortgaged tenements, and yet she asked only for an account of the rents re-

ceived by the defendant. How can a plaintiff say that a decree which gives him all that he asked, is erroneous? When a plaintiff expressly stints his relief, is he at liberty to say afterwards that there is error in the decree? Does not the maxim *expressio unius est exclusio alterius* apply in such a case?

Counsel, in reply to this, said: "It might have been more correct, but it was not necessary for the plaintiff to ask, specifically, for an account of the rents received by Robey, the father, for he might have obtained it under the prayer for general relief."

The vice-chancellor sustained a demurrer to the bill of review.

From this decree an appeal to the Lord Chancellor was taken, who affirmed the decree of the vice-chancellor, remarking, "that the plaintiff either did not ask at the hearing of the original cause for an account of the rents received by Robey, the elder, or, she did ask for it and was refused; that if she did not ask for it, she had no right to complain; and if she did ask for it, and was refused, the filing of a bill of review was not the proper course to get the decree set right."

The purpose of the bill of review in the present case, is to obtain larger relief than was obtained in the original cause. The decree, hereafter stated, shows the measure of relief which the chancellor did grant.

All that is said in the original bill and original decree, as shown by the bill of review, bearing on this question, is as follows: "And that by virtue of the payment of her said legacy to said Noble & Brother, and the delivery by said Noble & Brother to her said husband of said promissory notes, a trust resulted in favor of oratrix to the extent of said promissory notes so delivered, or the amount of the legacy so paid, and that the same was a charge upon the lands so bought, and that the equity of oratrix is superior to that of said Noble & Brother to have the lands subjected to the payment of said note for $5,508.65, retained by them as aforementioned. That said husband had never accounted to oratrix for said legacy, nor paid to her, nor for her use in any way said promissory notes delivered to him by said Noble & Brother, and that said notes so delivered to him were still due. * * That said husband of oratrix was insolvent, and the only security oratrix had for the payment of the amount due her by virtue of said resulting trust, was the security afforded by the mortgage aforementioned, and that said lands were not of sufficient value to satisfy the note held

by Noble & Brother, and the said two notes belonging to oratrix by virtue of said trust."

The prayer for relief is as follows: "That your Honor would, on final hearing, decree that there was a resulting trust in favor of oratrix to the amount of said notes delivered as aforesaid to oratrix's husband, on account of the payment of her said legacy to said Noble & Brother, and that said trust was a charge upon said lands, and that your Honor would cause an account to be taken before the register, ascertaining the amount due oratrix, and the other persons holding the outstanding said promissory notes. And that your Honor would settle the equities of the several holders of said notes which are a charge upon said lands, and order a foreclosure of said mortgage, and a sale of said lands for the payment of oratrix, and the other holders of said notes, in the order and amount determined by your Honor; and that your Honor grant her such other or further relief in the premises as should seem meet and proper."

In the decree pronounced on the original bill, the chancellor took a step beyond the purpose of the bill, as shown above in its averments and prayer, and declared : "That the payment of this sum in discharge of notes of her husband given for said plantation, and secured by said motgage, either entitles her to look to said Noble & Brother for said sum and interest thereon, and to have a personal decree against them for the same, or to regard said payment as an equitable tsansfer by said Noble & Brother of so much of said notes given for said plantation, to her husband in trust for her; and she having elected to take the latter, it is deemed that Caroliza C. Hallonquist is the equitable owner of so much of said notes, as was paid by said Freeny to said Noble & Brother, and that she has a priority over Noble & Brother, as to any unpaid balance due to them upon the note still held by them."

In this bill of review it is now complained that, in the decree above, the chancellor should have offered complainant an election, either to take a personal decree against Noble & Brother for the amount of her claim, or, to have the land sold in payment of her claim, with a personal decree against them for any balance the land failed to yield.

The complainant on the original hearing, either asked this specific relief, and it was refused her, or she did not ask it, but accepted and was satisfied with the relief granted her by the decree pronounced. If she then asked it, and it was refused, her remedy for the error, if it be error, was by appeal. The error then would lie merely in the judgment, and

[Meyer v. Johnston.]

would not be the *error apparent* on the face of the decree, which supports a bill of review. *P. & M. Bank* v. *Dundas,* 10 Ala. 667; *Caller* v. *Shields,* 2 Stew. & Port. 417. If she did not then ask this relief, but accepted and was satisfied with the relief granted, it is too late for her now to complain.

We have considered this case as if the original bill presented a case for equitable relief, and that on the original hearing, the complainant could have obtained the relief sought by the bill of review. We are not committed to either proposition, and must be understood only as deciding that the bill of review cannot be supported in any aspect, in which we have been able to consider it. The decree is reversed, and a decree must be here rendered dismissing the bill of review, at the costs of the next friend of the appellee, in this court, and in the court below.