## Tankersly *v.* Pettis.

*Bill of Review.*

1. *Bill of review; when not maintainable.*—To justify relief on bill for review, under the rule settled by the decisions of this court, the record of
VOL. LXI.

[Tankersly v. Pettis.]

the former suit, independent of the testimony, must satisfactorily and distinctly show that the court committed an error of law in the decree reviewed, arriving at an erroneous conclusion of law upon facts found by the record; erroneous inferences from the testimony, or error in denying it proper weight, and the like, are not matters for bill of review, and can be considered only on appeal.

2. *Same.*—Though the averments of the original bill authorize larger or different relief from that especially prayed, the error of not granting relief under the general prayer, can be reached only by appeal, and will not support a bill of review for error apparent.

3. *Settlement in Probate Court, when void.*—A settlement of an administration in the Probate Court, by an administrator who was at the same time administrator of deceased distributees, and guardian of other distributees, is a nullity; that court having no jurisdiction of a settlement in which the administrator occupies such different and antagonistic relations.

APPEAL from Montgomery Chancery Court.
Heard before H. A. HERBERT, Esq., as special chancellor.
The opinion states the case.

WATTS & SONS, and SAYRE & GRAVES, for appellant. When this bill of review is scanned, it will be seen that no error *on the face of the decree* is alleged. It is therefore clear that this bill is devoid of equity. The only errors alleged or complained of, are as to the *effect* of the *evidence* and the law arising thereon, in the original suit. You can not look to the *testimony* in the original suit, for error under a bill of review. For such errors, appeal is the only remedy.—*McDougald v. Dougherty*, 39 Ala. 409, and authorities there cited; *P. & M. Bank v. Dundas*, 10 Ala. 66; *Caller v. Shields*, 2 Stew. & Port. 417. Judged by the principles declared in these cases, the decree of the special chancellor was erroneous and should be reversed, and the bill here dismissed. The cases of *Cockrell v. Hays*, 41 Ala. and *Carswell v. Spencer*, 44 Ala. 204, have no application to this case.

ARRINGTON & GRAHAM, and R. M. WILLIAMSON, *contra.* It is insisted by appellants that any matter of error which could have been remedied on appeal can not furnish ground for a bill of review. To so hold, would be to eliminate bills of review from the chancery practice by judicial legislation in the face of the statute law of the State. We cite the language of the Supreme Court of Illinois, in *Evans v. Clement*, 14 Ill. 209, and which was quoted and adopted by our own Supreme Court in *McDougald v. Dougherty*, 39 Ala. 424, as expressive of the rule. "It has now become well settled that the court will, on such a bill, reverse or revise its own decree, for an erroneous application of the law to the facts found, *whenever a court of appeals would do so for the same*

*cause.*" In the same case, page 423, our court say, "that the relief for *error apparent* is not confined to accidental or inadvertent errors on which the chancellor does not appear to have exercised his judgment or reasoning powers, but may consist of error of law in the ordinary acceptation of that expression; such, for instance, as misjudging and misapplying the law to the facts stated—an erroneous and illogical conclusion from given premises." We think it will appear upon examination of the cases where bills of review have been dismissed on the ground that an appeal was the proper remedy, that there was a "misjudging of the facts" in the court below, or that the decree was entered by consent express or implied. In *Wadhams v. Gay*, 14 vol. Am. Law Reg. 426, the court say that "the decree appeared to be by consent, and that, therefore, a bill of review would not lie, on the familiar legal ground that there can be no error of law alleged against a judgment appearing to be entered by the consent of parties." The case of *Hallonquist v. Noble*, 53 Ala. 229, belongs to this class. In the case at bar there was, and could be no controversy as to the facts involving the liability of defendant to account.

That he was administrator of the several estates and guardian of complainants—that he had received a large amount of assets—and that he had made no settlement, except in the Probate Court, was admitted. The error obviously arose out of a misconception of the powers of the Probate Court, and the supposition that the settlement made therein were valid.

STONE, J.—The present case is a bill of review, filed to review and reverse a final decree rendered between the same parties, and to obtain the relief prayed in the original bill, on the alleged ground of error apparent. There was a demurrer filed to the bill of review, which the special chancellor overruled, and then granted the relief prayed for. The chief inquiry is, do the pleadings make a case of error apparent, under the rule settled in this State. To maintain a bill of review, there must be an error in point of law; that is, an erroneous result drawn by the court from the facts apparent on the record. It is not of a misjudging of the facts that a party can complain, but for an improper determination of the law. It is not permissible to look at the testimony, with a view of determining whether the chancellor scanned it properly, allowed it proper weight, or drew correct inferences from it. These are questions which arise on appeal,

[Tankersly v. Pettis.]

but not on bill of review. In the latter, the chancellor deals with record facts, not the evidence which goes to prove them. *McDougald v. Dougherty*, 39 Ala. 409. The court will, on such a bill, reverse or revise its own decree, for an erroneous application of the law to the facts found.—*Evans v. Clement*, 14 Ill. 209. To justify relief under such bill, the record of the former suit, independent of the testimony, must make it distinctly and satisfactorily appear, that the court, in the decree reviewed, committed an error of law, made an erroneous application of the law to the facts found, or mistook one name or thing for another name or thing. These constitute the error apparent, for which a bill of review will lie.

In the case of *Noble v. Hallonquist*, 53 Ala. 229, this court approved and adopted the doctrine laid down by the lord chancellor in the case of *Trulock v. Robey*, 15 Sim. 265. In each of those cases it was held that when a bill, in its averments, authorized larger relief than the chancellor granted, and the special prayer was for only the relief obtained, although there was a general prayer under which the larger relief might have been decreed, this might be the subject of an appeal, but would not support a bill of review. This court placed the complainant in a dilemma as follows: "The complainant on the original hearing, either asked this specific relief, and it was refused her, or she did not ask it, but accepted and was satisfied with the relief granted her by the decree pronounced. If she then asked it, and it was refused, her remedy for the error, if it be error, was by appeal. The error then would be merely in the judgment, and would not be the *error apparent* on the face of the decree, which supports a bill of review. If she did not then ask this relief, but accepted and was satisfied with the relief granted, it is too late for her now to complain."

The appellant, Tankersly, was, at one and the same time, administrator of the estate of George Pettis, the elder, of Theopilus Pettis and George Pettis, jr., distributees of the elder Pettis, who died after the death of their father, and was guardian of James and Mary Pettis, complainants in this suit. When George, the elder, died, his four children, named above, became his distributees, all being minors. Theopilus and George, jr., each died in their minority, and James and Mary became, in legal effect, sole distributees of the three estates; but, according to the forms of law, it was necessary first to settle the administration of the elder Pettis, to ascertain the amount that would pass in distribution to each of the living children, and to the personal representative of the

deceased ones; and then to settle the administration of the two deceased children's estates, in order to know what sums would pass to the guardian of the living children. Tankersly being administrator of each estate, and guardian of the survivors, who were minors, must, of necessity, settle each administration, in one representative capacity, with himself in other representative capacities. And he must settle each administration, before the guardianship of the minors could be settled.

On the 31st of October, 1865, Tankersly, the administrator, filed his three several accounts current in the Probate Court, for final settlement of his administrations of George Pettis the elder, Theopilus Pettis, and George Pettis, jr. When these settlements took place is not shown or averred. On the 28th of November, 1865, he filed his accounts current for final settlement of his guardianship of the complainants, and at the same time tendered his resignation of his said guardianships. When this settlement took place is not averred, nor is it averred when he ceased to be guardian. There is nothing in the record from which we can learn what were the decrees in the final settlement of the said several administrations. It is averred in the bill that on the settlement of the guardianship, there was decreed to complainant, Mary Pettis, $125.92, and to complainant James Pettis, $51.74— and to each $150 in Confederate treasury-notes, and $900 in Confederate eight per cent. bonds. These sums, it seems, were paid by Tankersly into the Probate Court for the benefit of the wards, and were subsequently received by the succeeding guardian of complainants, who were then infants of tender years. The aggregate of the sums thus paid, including the Confederate treasury-notes and bonds, was near $2,300. This, besides costs of administration and of settlements.

In 1866, the complainants in this suit filed their original bill against Tankersly, as administrator of each of the said estates, and as guardian of complainants, and against his sureties on each of the four said bonds, who were, in each case, to some extent, different. Mosely was surety on all the four bonds. Norman was surety on three of the bonds, not being on the bond for the younger George Pettis' estate. Carter was surety on the bond for Theopilus Pettis' estate, and on the bond for the guardianship of complainants. Pool was surety on the administration of the elder Pettis' estate,. and Stewart was surety for the administration of the estate of George Pettis, jr. In the original bill it is charged that

[Tankersly v. Pettis.]

Tankersly, in his final settlement of the estate of Theopilus Pettis, "charged himself with balance due in good money, $1,169.92," and in his settlement of George Pettis, jr.'s estate, with "balance due in good money, $432.77." The original bill further charges "that previous to the 16th day of May, 1860, the said Tankersly had in his hands from the sale of the property already mentioned, and from other assets of the estate of their father, after payment of all the debts of said estate, the sum of four thousand nine hundred and nineteen 32-100 dollars, in specie, or funds equivalent thereto, which he used for his own benefit, lending the whole, or a large portion thereof, at usurious interest, without ever accounting for the usurious profits—or otherwise using it for his own benefit." The bill then charges that Tankersly, during the war, received other large sums of assets in Confederate money, with which he paid the expenses of his wards, and the costs and expenses of the settlement of the several estates—the whole not exceeding $700; and with which Tankersly pretended to have purchased the $1,800 Confederate bonds, as an investment for complainants. The said original bill contains an interrogatory, by which Tankersly was required to answer "whether he used the money belonging to the estate of George Pettis, sr., or either of the aforesaid estates of which he was administrator or guardian, for his own benefit during the years from 1858 to 1865, or any part of said money; and if any part, how much; and if for part of the time above specified, then how much of said time, and what year or years, or part or parts thereof. If he did not so use said money, then in whose hands was said money, or any part thereof, and for what purpose was it there, and at what time, and how long." The prayer for relief is, "that said settlements in the Probate Court be set aside, and that said Tankersly and his said sureties be compelled to account with and pay to your orators, or to some one in trust for them, as in equity and good conscience they ought, and for other or further relief." We have now stated every material averment of the original bill, which bears on the questions we propose to discuss. This bill dispensed with sworn answer from the defendants. The answers admit that Tankersly had the sum of money changed—$4,919.32—at the time charged. Deny that he used any of the money for his own benefit—deny that he made more than lawful interest; allege that the Confederate money and bonds received by him, were received in good faith in payment for property sold, and for debts due, and that he fully accounted in said

settlements for all the assets. A demurrer was appended to the answer, assigning many grounds, and among them multifariousness. The decree of the chancellor was rendered at the March term, 1868, and is in the following words : " This cause came on to be heard, and was submitted for decree at the last term on the pleadings and the testimony, and was held over for consideration until the present term. And now, on consideration, it is ordered, adjudged and decreed that the complainants' bill of complaint be dismissed, and that the next friend of complainants pay the costs of this suit, for which execution may issue."

In 1873, the complainants, being still minors, filed the present bill of review, for alleged error apparent. The bill of review sets forth a copy of the original bill and answer, the substance of the material parts of which is stated above. It also sets forth the decree of the chancellor copied above. It avers that in the original cause, " testimony was taken, consisting of a transcript from the records of the Probate Court of the settlements of said Felix M. Tankersly as administrator of G. W. Pettis, sr., Theophilus H. Pettis, George W. Pettis, jr., and as guardian of George W. Pettis, jr., and of your orators, and of the depositions of witnesses in reference to the point made in the bill, that said Tankersly had made usurious interest, which he had failed to account for." The error apparent complained of in this bill is, that " orators are aggrieved by said decree, and that they ought not to be bound thereby, nor should any such have been made; and that the same is erroneous, and ought not to be reversed. And for error, do, according to the course of this honorable court, assign the following : That it appears by the allegations of the bill and the admissions of the answer that said Tankersly, as the administrator of George W. Pettis, sr., received a large sum of money from sales made by him of the property of said estate, and that at the time of each and all of his settlements thereof in the Probate Court, he was administrator of the estate of Theophilus H. Pettis, administrator of the estate of George W. Pettis, jr., and guardian of your orators : that all of said settlements are null and void, as said court had no jurisdiction of said settlements, because he was the representative of conflicting interests. That in truth and in fact the said Tankersly has never made any settlement of said estates, and that your orators were entitled to an account of his administrations in said honorable court of chancery, which alone had jurisdiction thereof, as prayed for in said bill of complaint." The

[Tankersly v. Pettis.]

bill then avers that the estate of George Pettis, sr., is ready for settlement; that the estates of Theopilus Pettis and George Pettis, jr., owe no debts, and the only property belonging to their estates is their interest in their said father's estate.    There was a demurrer to this bill of review, which the chancellor overruled, and granted the relief prayed for, as stated above.

Before Tankersly made his settlements as guardian, he must needs have settled his several administrations, for the complainants were the ultimate distributees of each of said three estates.    When he settled the administration of George Pettis, the elder, he necessarily settled with himself as administrator of Theophilus Pettis, and of George Pettis, the younger; and when he settled the administration of Theophilus Pettis, he settled with himself as administrator of George Pettis, the younger.    He could not, in the Probate Court, lawfully settle these administrations, by reason of the antagonist interests he represented.—*Hays v. Cockrell*, 41 Ala. 75; *Carswell v. Spencer*, 44 Ala. 204; *Foster v. Wilber*, 1 Paige, 537.    Whether the administration settlements being regular, he could, at the time these settlements were made, have lawfully settled with himself as guardian, we need not inquire.    There has been enacted, since that time, a statute which authorizes such settlement, a special guardian for the infant ward being appointed to represent him. Pamph. Acts, 1875–6, 233; Code of 1876, § 2529.    If this be a material question in this case, then the question whether Tankersly, at the time he made his administration settlements, was guardian of the complainants, is one on which the opposing counsel are not agreed.

According to the averments of the bill, admitted by the answer, he was such guardian when the accounts current were filed for the settlement of the administrations, and continued so for near a month afterwards.    The record does not inform us when he ceased to be guardian.    The undisputed averments of the bill show that the accounts current for the settlement of the three administrations were filed simultaneously on the 31st October, 1865, while the account current for the settlement of the guardianship, and offer to resign, bear date November 28th, 1865.    We are not informed when any of these settlements were in fact made; but, as we have shown, there was a necessity that the administrations should be settled, before the guardianship account could be properly adjusted.    We think, in the absence of denials in the answer, it is our duty to presume he remained guardian until after

the settlement of the administrations.    When anything con-
tinuous in its nature is shown to exist, its continuance will
be presumed, until the contrary is shown.—1 Greenl: Ev. §
42 ; 1 Brick. Dig. §§ 32 *et seq.*

As we have shown above, the equity of this bill of review
rests on the alleged error of the chancellor, in not decreeing
that the Probate Court settlements were nullities, and in not
forcing Tankersly to a settlement.    This error, it is con-
tended, is apparent on the record, or, what is the same thing,
manifest in the pleadings and decree, without consulting the
testimony.    We have given above a copy of the chancellor's
decree, and the substance of all that is said in the original
bill and answer that bears on this question.    We think the
averments of that bill, the interrogatory to defendant, and
the prayer for relief, all show that the primary, if not the
sole purpose of that bill, was to compel Tankersly to account
for the usurious interest, which it was averred he had real-
ized, and had not accounted for, and to make him account
for assets which the bill charged he had used for his own
purposes.    Hence, it is not charged in the bill that the Pro-
bate Court was without jurisdiction to make the settlements,
nor that Tankersly sustained incompatible relations to the
trust, which rendered a resort to chancery necessary.    Nor
is it shown by positive averment that Tankersly was guar-
dian when he settled the administrations.    All this is left to
inference or presumption, arising from the averments of date
when Tankersly filed his several accounts current for settle-
ment.    Nor is there anything in the prayer for relief, which
directs the mind to this feature of the case.    It is only the
general prayer, which would authorize the court to treat the
several trusts as never having been attempted to be settled,.
and to order and cover Tankersly to make settlements *de
novo*.    And the averments in the bill of review, as to the
subject on which parol testimony was taken in the original
cause, confirms our view that only the question of usurious.
interest realized and not accounted for, was pressed or con-
sidered in that case.    This brings this case directly within
the principle settled in *Noble v. Hallonquist, supra,* adopting
the rule laid down by the Lord Chancellor in *Trulock v.
Robey,* 15 Sim. 265.

It is not a matter of surprise that the principle settled in
*Hayes v. Cockrell,* 41 Ala. 75, should have been overlooked,.
when the original bill in this cause was filed.    That case was.
decided at the June term, 1867, while the original bill in
this cause was filed near a year before.    This may, to some

extent, account for the omission from that bill of many aver-
ments, and from the prayer, of specifications, which doubt-
less would have been incorporated therein, had that bill
sought relief on the ground that the settlements made in the
Probate Court were nullities.

There are other grounds on which we think the present
bill of review should have been dismissed, but we deem it
unnecessary to comment on them. The decree of the chan-
cellor is reversed, and a decree here rendered dismissing the
bill of review.